UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

Ciera Cook                          )
                                    )
    Plaintiff,                      )
                                    )
v.                                  )    No. 16 CV 50338
                                    )    Magistrate Judge Iain D. Johnston
Nancy A. Berryhill, Acting          )
Commissioner of Social Security,[1] )
                                    )
    Defendant.                      )

**MEMORANDUM OPINION AND ORDER**

Plaintiff Cierra Cook began experiencing severe anxiety around age 15, and was eventually diagnosed with bipolar disorder. She was hospitalized in May 2010 and then participated in a partial hospitalization program in October 2011. She eventually quit school because she was too anxious being around people. She now spends most of her time in her bedroom at her parent's house. Over the last several years, she has received counseling from a number of therapists. As even plaintiff concedes, therapy has improved her coping skills. However, soon after turning 18 years old, she applied for disability insurance benefits. After a hearing in January 2015, the administrative law judge ("ALJ") concluded that, although plaintiff still suffers from bipolar disorder, her condition had improved to the point where she could work certain jobs. The ALJ relied heavily on the testimony of Dr. Mark Oberlander.

Plaintiff argues here that the alleged improvement was merely an artifact of the episodic nature of her illness, and that she inevitably will regress. Plaintiff argues that the ALJ erred by cherrypicking the evidentiary record and by misapplying the treating physician rule. Encompassed within the second argument is a narrower sub-argument, which is that Dr.

---

[1] Nancy A. Berryhill has been substituted for Carolyn W. Colvin. Fed. R. Civ. P. 25(d).

Oberlander rendered his opinion without having reviewed plaintiff's most recent records. These records, set forth in Exhibit 20F, consist of 95 pages and cover plaintiff's treatment at Rosecrance from late 2013 to early 2015. After spending some time reviewing the parties' arguments and the 770-page record, the Court has concluded that a remand is required based on the latter argument and that this conclusion can be succinctly explained.

At the administrative hearing, it became apparent that the recent records had not been made available to Dr. Oberlander. The ALJ asked why plaintiff's counsel waited "so long" to request these records. R. 74. The ALJ was frustrated and blamed counsel for the failure to timely procure these records.[2] The ALJ even expressed concern that Dr. Oberlander could not give a valid opinion as a result. *See id.* ("I don't know that the doctor is going to be able to give us any sort of opinion at this point without the updated records."). Nevertheless, the ALJ proceeded with the hearing, and Dr. Oberlander testified, as noted above, that plaintiff had "made good progress with regard to psychiatric symptomatology" over the last three years and was, therefore, able to work certain "low stress" jobs. R. 76, 81. After the hearing, counsel submitted the recent Rosecrance records. In the ALJ's decision, the ALJ adopted Dr. Oberlander's improvement rationale, concluding that plaintiff's treatment records "show improvement with medical management," but that she also had "ongoing fluctuating symptoms and intermittent exacerbations." R. 22. At the end of the decision, the ALJ noted that counsel had submitted the Rosecrance records (Ex. 20F) after the hearing, but concluded that these records merely showed "continued participation by [plaintiff] in treatment with resulting improvement."[3] R. 28. In short, the ALJ believed that the records would not have changed Dr. Oberlander's opinion.

---

[2] Different counsel represented plaintiff at the hearing.
[3] The ALJ provided the following brief analysis of these records: "The record reflects infrequent contact with Dr. D'Souza, with no intensity of treatment. His assessment shows no significant abnormalities and there are no additional notes from him to support the low GAF he posits. Nor are there any treatment notes in the post-hearing

2

Plaintiff disagrees with this conclusion. Plaintiff argues that, even though these records "show some increase in coping skills (after years of therapy), plaintiff was still acting self-destructive[ly] in 2014 and 2015." Dkt. #10 at 11-12. To support this claim, plaintiff cites to the following two incidents: "In 2014, [plaintiff] started breaking things in her mother's office after getting upset. In 2015, she cut herself with a razor." *Id.* (citations omitted). Plaintiff's theory is that these two incidents, along with other evidence from these records, cast doubt on the ALJ's improvement rationale. In her reply, plaintiff argues that the ALJ should have "proffered [the] additional evidence to Dr. Oberlander post-hearing." Dkt. #18 at 2.

In response, the Government raises two main counter-arguments. First, the Government asserts that plaintiff "now seeks to profit from her hearing representative's lack of punctiliousness" in submitting these records. Dkt. #17 at 7. Second, the Government notes that the ALJ "specifically addressed" the recent records and found that they "warranted no change in the RFC or [the] decision." *Id.* at 8. To support the latter argument, the Government has culled several facts from these records, noting for example that plaintiff had improved after a 12-week anger management course and that Dr. D'Souza, in his most recent visits, wrote that plaintiff was stable and doing well, with no mood swings and no medication side effects. *Id.*

The Court is not persuaded by either argument. The first is essentially a waiver argument in which the Government is suggesting that plaintiff should be penalized for her counsel's (apparent) lack of diligence. However, the Government has not provided legal authority to support this argument. Moreover, ALJs have a general duty to develop a full and fair record. *See Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015). At the hearing, the ALJ noted that these records *could* be important. This Court agrees. Given that these were the most recent records,

---

submissions to support the low GAF scores. Exhibit 20F at 28 and 83. They are inconsistent with the earlier GAF scores and there is no attempt to explain the inconsistency." R. 28.

they were relevant to the improvement rationale. Also, they were not simply a snapshot of, say, a single doctor visit but covered a year of regular treatment.

The Government's second argument is likewise untenable. The various facts cited by the Government to show that the ALJ's conclusion was justified (such as the completion of an anger management course) were not mentioned by the ALJ in the decision. Accordingly, these are after-the-fact explanations. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) ("the *Chenery* doctrine [] forbids an agency's lawyers to defend the agency's decision on grounds that the agency itself had not embraced"). A related problem with both the ALJ's brief analysis, as well as the Government's more fact-specific analysis, is that they are layperson analyses. *See Lewis v. Colvin*, No. 14 CV 50195, 2016 U.S. Dist. LEXIS 115969, *11 n. 3 (N.D. Ill. Aug. 30, 2016) (courts, counsel, and ALJs must resist the temptation to play doctor).

The Court's decision to remand this case finds support in a recent, similar Seventh Circuit decision. In *Moreno v. Berryhill*, 2018 WL 914954 (7th Cir. Feb. 16, 2018), the Seventh Circuit remanded for a new hearing because the ALJ relied on an "outdated mental-health assessment." *Id.* at *1. The Government argued there, just as it does here, that "the newer mental-health records would not have made a difference because they showed improvement." *Id.* at 5. However, the Seventh Circuit rejected this argument, stating as follows:

> This argument is based on the ALJ's own assessment of the more recent records. We have made clear, however, that ALJs are not qualified to evaluate medical records themselves but must rely on expert opinions. *Meuser v. Colvin*, 838 F.3d 905, 911 (7th Cir. 2016) (remanding because the ALJ improperly "played doctor"); *Goins*, 764 F.3d at 680 (prohibiting ALJs from "playing doctor" by summarizing the results of a medical exam without input from an expert).

*Id.*

In sum, although the Court finds that the ALJ erred in not seeking an updated medical opinion regarding the new records, the Court is not suggesting that the ALJ's improvement

4

rationale was unpersuasive or lacking in evidentiary support. Having found that a remand is required, the Court need not address plaintiff's remaining arguments. On remand, the ALJ should consider all the issues and arguments with a fresh eye, especially in light of the recent records.

For the foregoing reasons, plaintiff's motion for summary judgment is granted, the government's motion is denied, and this case is remanded for further consideration.

Date: March 6, 2018          By: _____
                                  Iain D. Johnston
                                  United States Magistrate Judge